# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GE GROUP LIFE ASSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| | ) CIVIL ACTION NO. 3:05-342 |
| v. | ) |
| | ) JUDGE KIM R. GIBSON |
| GUIDO TURNER | ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

This matter comes before the Court on Plaintiff GE Group Life Assurance Company's (hereinafter "GE Group Life") Motion for Summary Judgment (Doc. No. 56). Plaintiff's Motion for Summary Judgment was accompanied by a supporting memorandum (Doc. No. 57), and a Concise Statement of Material Facts ("SOMF") (Doc. No. 58). Defendant Guido Turner (hereinafter "Turner") has not responded to Plaintiff's Motion for Summary Judgment.

### A. RELEVANT FACTUAL AND PROCEDURAL HISTORY

The following facts are taken from GE Group Life's Concise Statement of Material Facts. These unopposed facts, to the extent that they are supported in the record, are deemed admitted because Turner did not file his own Concise Statement of Material Facts.[1]

GE Group Life insures and administers long term disability benefit plans as defined by 29

---

[1] Western District of Pennsylvania Local Rule 56.1(e) states: "Admission of Material Facts. Alleged material facts set forth in the moving party's Concise Statement of Material Facts or in the opposing party's Responsive Concise Statement, which are claimed to be undisputed, will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party."

U.S.C. § 1002(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.A. § 1001 et seq. SOMF, ¶ 1; Ames Department Stores, Inc. ("Ames") sponsored a plan (hereinafter "Plan") that provided long term disability benefits to eligible employees and their eligible dependants through a group insurance policy (hereinafter "Group Policy"). SOMF, ¶ 2. GE Group Life administered claims under the Plan pursuant to the terms of the Group Long Term Disability Certificate (hereinafter "Group Certificate"), which GE Group Life issued to Turner. SOMF, ¶ 3. GE Group Life has discretionary authority to make claim, eligibility, and other administrative determinations regarding the Plan. SOMF, ¶ 4. The Group Certificate states that upon proof of a qualifying disability, a participant will receive a "Monthly Benefit" equal to the lesser of 60 percent of the participant's Basic Monthly Earnings or the maximum monthly benefit of $10,000. SOMF, ¶ 7. The Monthly Benefit is reduced by any "Other Income." SOMF, ¶ 8. Other Income expressly includes any amount of disability or retirement benefits received under the United States Social Security Act. SOMF, ¶ 9. The Group Certificate requires a participant who becomes eligible for any Other Income to apply for that income. SOMF, ¶ 10.

After becoming disabled in June 1996, Turner filed for benefits under the Plan. SOMF, ¶ 11. GE Group Life reviewed and approved Turner's claim, and began paying a Monthly Benefit to Turner in July 1997. SOMF, ¶ 212. At some point after awarding benefits, GE Group Life learned that Turner received a lump-sum award of Social Security Disability Income ("SSDI") for benefits due, with a monthly award to continue indefinitely. SOMF, ¶ 13. Based upon this acquired information, GE Group Life reassessed its calculation of Plan benefits that Turner was entitled to receive, and determined that it overpaid Turner a total of $31,939.49 ("the Overpayment"). SOMF, ¶ 14. While GE Group Life then demanded reimbursement in the amount of the Overpayment,

2

Turner failed to do so. SOMF, ¶ 15. Therefore, GE Group Life filed this lawsuit to recover the Overpayment. SOMF, ¶ 16.

The procedural history of this case is somewhat irregular. The case was transferred to this Court from the United States District of Connecticut on August 18, 2005. Plaintiff filed a Complaint in the District of Connecticut on March 15, 2005. Doc. No. 22, ex. 1. Plaintiff's Complaint sought recovery from Defendant for an alleged breach of the terms of an employee benefit plan. Doc. No. 22, ex. 1, p. 6. Plaintiff's claim for relief includes: the amount allegedly due under the contract, interest, reasonable attorney's fees, and costs, and a constructive trust or equitable lien. Doc. No. 22, ex. 1, p. 6.

Turner was assigned counsel by the District of Connecticut. Doc. No. 22, ex. 10. However, rather than responding to the Complaint, Turner's appointed counsel filed a motion to transfer (Doc. No. 22, ex. 18) the case to this district. Following the transferral of the case, Turner's appointed counsel filed a motion to withdraw as counsel (Doc. No. 25), which was granted by this Court on September 8, 2005. Doc. No. 26. Following this withdrawal, Turner sought numerous times to have this Court appoint him counsel. Doc. Nos. 28, 40 The Court denied these requests, as Turner was not sufficiently indigent to qualify under the Court's standards for recommending the appointment of pro bono counsel. Doc. Nos. 30, 32, 41. Rather than complying with applicable Rules, Turner frequently wrote letters to the Court with comments or requests. *See, e.g.,* Doc. No. 50.

In matters where a litigant proceeds *pro se*, the Court will make every attempt at generous construction of her filings, as *pro se* litigants are held to less stringent standards than trained lawyers. *See Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (*citing Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). However, holding a *pro se* litigant like Turner to less

3

stringent standards does not mean that the Court may excuse failures to file necessary documents, and failures to appear. This case would have proceeded in a far more expeditious manner had Turner obtained prudent counsel.[2]

## STATEMENT OF JURISDICTION

This action was brought pursuant to § 502(a)(3) of the Employee Retirement Income Security Act of 1974 (ERISA). 29 U.S.C. § 1132(a)(3). If ERISA is applicable, "the district courts of the United States shall have exclusive jurisdiction of civil actions under this title brought by the Secretary or by a participant." 29 U.S.C. § 1132(e)(1). This Court has jurisdiction under 29 U.S.C. § 1132(e)[3] and 28 U.S.C. § 1331. Venue is proper in the Western District of Pennsylvania under 28 U.S.C. § 1391.

## II. Legal Standards

### A. Propriety of Summary Judgment Motion Where No Answer Filed

Prior to an assessment of the merits of the summary judgment motion, a threshold question is whether Plaintiff's Summary Judgment Motion is ripe for adjudication. Defendant never filed an

---

[2]Due perhaps to the expense of attorneys, numerous civil litigants refuse to hire counsel and proceed "pro se." *See* Lawrence Baum, *The Future of the Judicial Branch: Courts and Democracy in the Twenty-First Century*, in *Institutions of American Democracy: The Judicial Branch* 517, 529(Kermit L. Hall and Kevin T. McGuire, eds., 2006) (commenting upon the prohibitive costs of civil litigation and noting the related trend that "[i]ncreasingly, individuals represent themselves in court, acting "pro se", rather than using a lawyer."). Unfortunately, this trend in self-representation is harmful both to the private rights of numerous citizens and society at large. While a court may provide a generous construction of the filings of a pro se litigant, a court certainly cannot treat the party with any special dispensation, or become that litigant's advocate. *See Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir.1986) ("*pro se* litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record."). In large part, our system of justice depends upon private law enforcement; when parties proceed without expert representation, courts are forced to proceed absent the benefit of hearing from two opposing advocates with legally supportable arguments.

[3]As will be discussed *infra*, there is somewhat of a controversy surrounding federal district court subject matter jurisdiction and the precise boundaries of the statutory term "equitable relief"; upon analysis, this Court has found that subject matter jurisdiction is appropriate in this case.

4

Answer. A typical civil case never confronts this issue, as either a defendant files an Answer, or a plaintiff moves for entry of default and default judgment. For reasons unknown to the Court, Plaintiff has not moved for entry of default under Rule 55. Instead, Plaintiff conducted discovery and filed this instant motion for summary judgment.

Federal Rule of Civil Procedure 56(a) governs when a claiming party may move for summary judgment. "A party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of the claim. The motion may be filed at any time after: (1) 20 days have passed from commencement of the action; or (2) the opposing party serves a motion for summary judgment." Fed. R. Civ. P. 56(a).

Facing a similar situation in 1984, the District of New Jersey explained:

> [D]efendant first contends that plaintiff's summary judgment motion is premature since defendant has not yet filed an answer to the Amended Complaint. Under Fed. R. Civ. P. 56(a), the plaintiff may move for summary judgment on all or part of its claims after the expiration of 20 days from the commencement of the action. This rule specifically changed the prior rule, which permitted a plaintiff to move for summary judgment only after a formal answer to the complaint was filed. *See* "Notes of Advisory Committee on Rules" to Rule 56. Plaintiff's motion is therefore timely.

*Electro-Catheter Corp. v. Surgical Specialties Instrument Co.*, 587 F. Supp. 1446, 1456 (D. N.J. 1984).

Rule 56(a), in its present form, allows a claimant to move for a summary judgment "at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party." Fed. R. Civ. P. 56(a).

**B. Propriety of Granting Summary Judgment When Motion for Summary Judgment is Not Opposed**

A further complication in the abnormal procedure of this case is that Defendant has not filed any responses to Plaintiff's Motion for Summary Judgment. Rule 56(e)(2) describes the obligation of a non-moving party to respond to the motion: "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." Fed. R. Civ. P. 56(e)(2).

The phrase "if appropriate", contained in Rule 56(e)(2) prevents the Court from merely granting some type of "default" summary judgment. Instead, the Court has the obligation to assess the record in the case to determine whether summary judgment is appropriate.

### C. Summary Judgment Standards

Summary judgment is appropriate only if it there is no genuine issue as to any material fact. Furthermore, in this particular case, it must appear that the Defendant could not present a genuine issue of a material fact by filing an answer.

The following standards are applied in ruling upon a motion for summary judgment:

> Summary judgment is appropriate only when it is demonstrated that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-32, 106 S. Ct. 2548, 2552- 57, 91 L. Ed. 2d 265 (1986) ; Fed. R. Civ. P. 56(c). An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In deciding a motion for summary judgment, all reasonable inferences must be drawn in favor of the non-movant. *Oritani Sav. And Loan Ass'n v. Fidelity and Deposit Co.*, 989 F.2d 635, 638 (3d Cir. 1993).

*Troy Chem. Corp., v. Teamsters Union Local No. 408*, 37 F.3d 123, 125-126 (3d Cir. 1994).

6

Federal Rule of Civil Procedure 56(c) states in pertinent part that judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Regarding the materiality standard, the Supreme Court explained:

> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. See generally 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2725, pp. 93-95 (1983). This materiality inquiry is independent of and separate from the question of the incorporation of the evidentiary standard into the summary judgment determination. That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs. Any proof or evidentiary requirements imposed by the substantive law are not germane to this inquiry, since materiality is only a criterion for categorizing factual disputes in their relation to the legal elements of the claim and not a criterion for evaluating the evidentiary underpinnings of those disputes.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211 (1986).

*Anderson* also explained the proscription of judicial credibility determination on summary judgment:

> Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. Adickes, 398 U.S., at 158-159, 90 S. Ct., at 1608-1609. Neither do we suggest that the trial courts should act other than with caution

7

> in granting summary judgment or that the trial court may not deny
> summary judgment in a case where there is reason to believe that the
> better course would be to proceed to a full trial. Kennedy v. Silas
> Mason Co., 334 U.S. 249, 68 S. Ct. 1031, 92 L. Ed. 1347 (1948).

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 - 2514, 91 L. Ed. 2d 202, 216 (1986).

Where the party seeking summary judgment has proved its case, the party opposing summary judgment must do more than simply oppose the motion or raise a mercurial factual issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial.*" Fed. R. Civ. P. 56(e) (emphasis added). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (internal citations omitted) (footnote omitted).

## III. Analysis

### A. ERISA Governs Benefits at Issue

ERISA govern employee pension benefit plans and employee welfare benefit plans. *See, e.g.*, *Middleton v. Philadelphia Elec. Co.*, 850 F. Supp. 348, 351 (E.D. Pa.. 1994). ERISA defines an "employee welfare benefit plan" as "any plan, fund or program . . . established or maintained by an employer . . . for the purpose of providing for its participants . . . benefits in the events of sickness, accident, disability, death . . . ." 29 U.S.C. § 1002(1). The plan at issue was provided by Turner's employer, for the purpose of providing disability benefits; therefore, this plan and the benefits at

8

issue are governed by ERISA.

## B. GE Group Life has Standing as a Plan Fiduciary under ERISA

A party is a fiduciary with respect to an ERISA plan "to the extent . . . he exercises any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). ERISA expressly authorizes fiduciaries of ERISA-governed plans to sue to seek redress of violations or enforce provisions of ERISA or of particular plans. 29 U.S.C. § 1132(a)(3). The Ames-GE Group Life Plan identifies GE Group Life as a Plan fiduciary, meaning that GE Group Life is "charged with the obligation, and discretionary authority to make claim, eligibility, and other administrative determinations regarding these plans." Doc. No. 58, ¶ 4. Because GE Group Life had discretionary responsibility to administer the Ames-GE Group Life Plan, GE Group Life is a "fiduciary" of the Plan under ERISA. *See Krensavage v. Bayer Corp.*, 2006 U.S. Dist. LEXIS 69958 (W.D. Pa. Sept. 27, 2006) (finding that a corporation that had discretion to make final factual determinations relevant to claims was a fiduciary as defined by ERISA).

## C. Turner Violated the Provisions of the Ames-GE Group Life Plan by Failing to Reimburse the Plan as Required under the Plan Contract

The Court concludes that the Ames-GE Group Life Plan Agreement is valid and governs the rights and responsibilities of the parties.

In plain and definite terms, the Plan classified Turner's Retroactive SSDI Award as "Other Income." SOMF, ¶ 9. The Provisions of the Plan require Beneficiaries to reimburse the Plan for overpayments. SOMF, ¶ 8. Once Turner received a retroactive SSDI award, and having already been paid Plan benefits, Turner was obliged by the terms of the Plan to repay the amount of Plan benefits already received. SOMF, ¶ 14.

9

In short, Turner has been paid twice. The Plan clearly contemplated precisely this scenario, and expressly dictated that a beneficiary's Plan Benefits would be subject to an offset of SSDI received. SOMF, ¶ 8. Turner breached the terms of the Plan by failing to reimburse the Ames-GE Group Life Plan for his retroactive SSDI award

The language of the governing section of the Plan is plain. *See* Doc. No. 56, ex. A, pp. 14-15. This Court cannot imagine any type of viable argument that Turner could raise as to an alternative interpretation of the agreement. Furthermore, there appears to be no other agreement between the parties that could possibly be at issue.

The result in this matter is not only an inevitable consequence of plain contractual interpretation, it is also equitable. The essence of insurance is that an insured pays a premium and receives a defined benefit. Here, the benefit was expressly defined as an amount that would be offset by any SSDI. In simple terms, the agreement plainly spelled out that the benefit was going to be X minus SSDI. That was the basis of the funding, actuarial and risk-management assumptions of the Plan. However, Turner now appears to be claiming that the benefit should have been simply X. Frankly, if Turner's position were to be validated, the entire concept of fair contractual insurance would be undermined.

In hindsight, it is not surprising that this situation became contentious and that GE Group Life has struggled to recover the overpayment. Ideally, as soon as Defendant received his social security lump sum payments, he should have immediately notified GE Group Life and paid them what was owed. However, when people hold onto a check for $31,939.48 for very long, entropy kicks in and the money gets spent. From a business sense, GE Group Life would have been wise to check more frequently on the status of Turner's SSDI application, and preempted the eventual chain

10

of events. Regardless, Defendant was paid by the plan more than what he was owed, and more than what he bargained for. In participating in the plan, and accepting benefits from it, Turner was charged with an understanding of its terms; therefore, his understanding of the contract's terms is not a material issue of fact. In sum, Turner must repay GE Group Life the amount of the benefit overpayment.

## D. Whether Rescission of Overpayment is "Appropriate Equitable Relief"

One obstacle remains to an order of relief in this case. ERISA authorizes fiduciaries of ERISA-governed plans to sue for injunctive or "other appropriate equitable relief" to redress violations or enforce provisions of ERISA or of a particular plan. 29 U.S.C. § 1132(a)(3). Precisely what constitutes "appropriate equitable relief" has been a matter of significant legal controversy. *See, e.g., Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 122 S. Ct. 708, 151 L. Ed. 2d. 635 (2002) (laying out guidelines for what constitutes "appropriate equitable relief"). Upon review of the most recent relevant decisions, this Court concludes that ordering judgment in favor of GE Group Life in the amount of $31, 939.48 is within the bounds of "appropriate equitable relief."

In *Great-West*, the Court explained that equitable restitution as contemplated by ERISA is limited to circumstances where a party asserts title or right to possession of particular property. 534 U.S. 204, 213, 122 S. Ct. 708, 151 L. Ed. 635 ("Plaintiffs can seek restitution in equity, in form of constructive trust or lien, when money or property identified as belonging to Plaintiff Can be clearly traced to particular funds in defendant's possession.").

A more recent decision, *Sereboff v. Mid-Atlantic Medical Services*, clarified this issue. 547 U.S. 356, 126 S. Ct. 1869, 164 L. Ed. 2d 612 (2006). In *Sereboff,* an ERISA-governed plan sought restitution in the form of an equitable lien on specific settlement funds received by the Sereboffs.

11

*Id.* at 362, 126 S. Ct. at 1874, 164 L. Ed. 2d at 620. The Court concluded that seeking moneys from a particular fund, or identifiable benefit, is seeking restitutionary relief as contemplated by ERISA, and could be enforced via an equitable lien or constructive trust, even where the plaintiff cannot complete tracing to property presently in the defendant's possession. *Id.* at 365-67, 126 S. Ct. at 1875-76, 164 L. Ed. 2d at 621-22.

Relief in this matter falls in line with the boundaries of "appropriate equitable relief" as defined in *Sereboff*. The relief granted herein is clearly equitable in nature: GE Group Life is merely recovering a defined portion of funds that rightly belong to it. This equitable relief is available because GE Group Life has successfully made its claim to specific, identifiable funds.

GE Group Life has shown that it had a reasonable expectation of payment, that Turner should reasonably have expected to pay, and that society's reasonable expectations of person and property would be defeated by nonpayment. GE Group Life has proven that it reasonably expected to be reimbursed following the conveyance of a large retroactive SSDI award that converts previous Plan payments into overpayments. Finally, as discussed *supra*, society cannot expect to continue to enjoy the benefits of risk-spreading via insurance contracts if the equities behind those contracts are not enforced. In other words, society's reasonable expectations of person and property would be defeated by nonpayment.

In sum, this is a matter of equity: GE Group Life has "specifically identified a particular fund, distinct from [Turner's] general assets . . . and a particular share of that fund to which [GE Group Life] was entitled." *Sereboff*, 547 U.S. at 364, 126 S. Ct. At 1875, 164 L. Ed. 2d at 621. Turner received more than he bargained for. Society and the Court cannot allow this type of double-payment, as doing so would unjustly enrich Turner at the expense of GE Group Life. Insurance

companies, such as GE Group Life, serve a valuable purpose to society, and that purpose can only be effectuated in a fair bargaining climate. If beneficiaries were allowed to retain double payment or overpayment of benefits, the actuarial assumptions and financial models undergirding insurance plans would collapse, as would all insurance companies. Individuals would be left without methods to manage risk.

By failing to reimburse the plan as required under the plan contract, Turner retained possession of funds that rightly belonged to the Ames-GE Group Life Plan. That wrongful retainer should be disgorged and Turner must make restitution for the overpayment, $31,989.48, that he has received.

GE Group Life's initial prayer for relief included a request for interest, costs and fees. ERISA does not address the propriety of awarding prejudgment interest; therefore, the court may exercise its discretion, so long as the exaction of prejudgment interest would not be inequitable. *Skretvedt v. E.I. Dupont de Nemours*, 372 F.3d 193, 195-96 (3d Cir. 2004); *Anthuis v. Colt Indus. Operating Corp.*, 971 F.2d 999, 1009 (3d Cir. 1992). The general remedial nature of ERISA suggests that prejudgment interest is appropriate if it is necessary to make the prevailing party whole. *Webb v. GAF Corp.*, 949 F. Supp. 102 (N.D.N.Y. 1996). In this matter, it appears that it will be difficult to recover any significant judgment from Defendant; consequently, such an award would not serve to make the prevailing party whole. Therefore, the Court exercises its discretion to refuse to award prejudgment interest. However, postjudgment interest is obviously available under 28 U.S.C. § 1961.

As to attorney's fees and costs, 29 U.S.C. 1132(g)(1) directs that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." Under Third Circuit law,

13

in determining whether to allow attorneys' fees and costs, courts should consider the following five factors: "(1) the offending party's culpability or bad faith; (2) the ability of the offending parties to satisfy an award of attorney's fees; (3) the deterrent effect of an award of attorney's fees; (4) the benefit conferred upon the members of the pension plan as a whole; and (5) the relative merits of the parties' positions." *Martorana v. Bd. of Trs. of Steamfitters Local Union 420 Health, Welfare and Pension Fund*, 404 F.3d 797 (3d Cir. 2005) (*citing Ursic v. Bethlehem Mines*, 719 F.2d 670, 673 (3d Cir. 1983)). In this matter, the Court finds that the second factor weighs heavily. Based upon Defendant's representations throughout this litigation, it appears that Defendant is in no financial condition to satisfy an award of additional attorney's fees. Furthermore, it appears to the Court that such an award would have little deterrent effect upon other persons in similar conditions. This Court, in exercising the discretion granted it by statute, finds that an award for costs and attorney's fees is inappropriate; therefore, any motion requesting such an award under Rule 54 will not be accepted.

## III. Conclusion

The Court finds GE Group Life is entitled to judgment as a matter of law, and there are no genuine issues of material fact in dispute this case. The Court has also concluded that ERISA governs the dispute, GE Group Life has standing, this Court has subject matter jurisdiction, GE Group Life seeks equitable relief, and that GE Group Life is entitled to an equitable lien on the amount of overpayment. Appropriate equitable relief in this matter is for GE Group Life to recover from Turner the exact amount of overpayment of funds, which is the SSDI award of $31,989.48. An appropriate order follows.

**AND NOW**, this 20th day of January, 2009, in accordance with the foregoing Memorandum Opinion, IT IS HEREBY ORDERED THAT Plaintiff's Motion for Summary Judgment is GRANTED.

BY THE COURT:

*/s/ Kim R. Gibson*

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**